IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-546-LPS-CJB |
| v. | ) ) ) | **PUBLIC VERSION** |
| COHERUS BIOSCIENCES, INC. | ) ) | |
| Defendant. | ) ) | |

# **DEFENDANT COHERUS BIOSCIENCES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES**

OF COUNSEL:
Bradford P. Lyerla
Louis E. Fogel
Aaron A. Barlow
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

Kenneth L. Dorsney (#3726)
Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendant*
*Coherus Biosciences, Inc.*

Dated: October 11, 2019
          October 18, 2019 Public Version

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF FACTS .....................................................................................................2

    A. The Patent Dance ..........................................................................................................2

    B. The Lawsuit ..................................................................................................................3

III. ARGUMENT ..........................................................................................................................5

    A. Legal Standard .............................................................................................................5

    B. This Case is Exceptional ..............................................................................................6

    C. Fair Estimate of Amount Sought ................................................................................11

IV. CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Coherus BioSciences Inc.*,
    931 F.3d 1154 (Fed. Cir. 2019) ............................................................................................ 5, 10

*Amgen Inc. v. Sandoz Inc.*,
    877 F.3d 1315 (Fed. Cir. 2017) .................................................................................................. 7

*Arunachalam v. Int'l Bus. Machines Corp.*,
    2019 WL 1388625 (D. Del. Mar. 27, 2019) .............................................................................. 9

*Cosmo Techs. Ltd. v. Actavis Labs. Fl, Inc.*,
    2019 WL 1417459 (D. Del. Mar. 28, 2019) .............................................................................. 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) .................................................................................................................. 1

*Finnavations LLC v. Payoneer, Inc.*,
    2019 WL 1236358 (D. Del. Mar. 18, 2019) ..................................................................... 6, 7, 9

*Forschung e.V. v. Sirus XM Radio Inc.*,
    2019 WL 1091386 (D. Del. Mar. 8, 2019) ................................................................................ 9

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...................................................................................................... 9

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017) ................................................................................................ 11

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
    2015 WL 4455606 (D. Del. July 21, 2015) ........................................................................... 6, 7

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) .................................................................................................. 9

*NOVA Chems. Corp. v. Dow Chem. Co.*,
    2015 WL 5766257 (D. Del. Sept. 30, 2015) ............................................................................ 12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ............................................................................................................... 5, 6

*Parallel Iron LLC v. NetApp, Inc.*,
    84 F. Supp. 3d 352, 363 (D. Del. 2015) ................................................................................... 12

*Sandoz Inc. v. Amgen Inc.*,
  137 S. Ct. 1664 (2017) .................................................................................................... 8

*Vehicle Operation Techs. LLC v. Ford Motor Co.*,
  2015 WL 4036171 (D. Del. July 1, 2015) ..................................................................... 12

**STATUTES**

35 U.S.C. § 285 .................................................................................................... 1, 5, 11, 12

42 U.S.C. § 262(i), (k) ....................................................................................................... 3

42 U.S.C. § 262(*l*) .............................................................................................................. 3

**OTHER AUTHORITIES**

Amgen News Releases, *Amgen Reports Fourth Quarter and Full Year* ......................... 11

Rule 12(b)(6) ............................................................................................................ 4, 8, 9

Rule 52(c) ........................................................................................................................... 8

Rule 54 ............................................................................................................................. 11

I.     INTRODUCTION

Coherus Biosciences, Inc. ("Coherus") moves for an award of attorneys' fees against Amgen, Inc. and Amgen Manufacturing Limited ("Amgen") pursuant to 35 U.S.C. § 285.[1]

This case is a paradigmatic case of abuse of the doctrine of equivalents. "The doctrine of equivalents is premised on language's inability to capture the essence of innovation." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002). "The language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty." *Id.* at 731. In this case, however, Amgen invoked the doctrine of equivalents to accuse a process of infringement, despite remarkably clear language in the claims and prosecution history *excluding* the accused process from the range of its novelty.

The claims recite three combinations of salts: sulfate/citrate, sulfate/acetate, and acetate/citrate. During the Biologics Price Competition and Innovation Act ("BPCIA") "patent dance," Coherus disclosed to Amgen, seven months before this case began, that its process used none of those combinations, but instead used a ▮▮▮▮▮▮▮▮▮▮▮▮ The carefully chosen language of the claim obviously does not encompass ▮▮▮▮▮▮▮ If there was any doubt about this, Amgen emphasized to the examiner during prosecution that the prior art did not disclose the "*particular* combination of salts" recited in Amgen's claims—making it clear that the claims were limited to the particular combinations therein. Moreover, the specification explicitly ▮▮▮▮▮▮—making clear that Amgen made the deliberate decision to exclude it from the claim. The responsible thing for Amgen to do would have been to acknowledge that Coherus did not infringe its claims and compete in the market rather than in the courtroom.

---

[1] Pursuant to Oral Order (D.I. 89), Coherus "shall have until 10/11/19 to file a motion [for attorneys' fees], as set forth in [88] joint status report."

1

But instead Amgen pressed on.  It sued Coherus under the doctrine of equivalents, despite breathing not a single word in the complaint about how ███████████████ could possibly be the equivalent of the three specific salt combinations recited in the claims.  Given this flaw in the pleading, Coherus filed a motion to dismiss Amgen's complaint for failure to state a claim.  In its response, Amgen failed to address the prosecution history cited by Coherus, instead attempting to save its complaint with weak, peripheral arguments.  The Magistrate Judge recommended, and the District Court agreed, that Amgen's claims should be dismissed before discovery—a rare step underscoring the weakness of Amgen's claims.  But still Amgen did not give up, instead wasting more of Coherus's time and money by filing a doomed appeal.  The Federal Circuit, unsurprisingly, unanimously affirmed.

Yet Coherus's victory was, in part, pyrrhic.  Coherus had to endure ███████ ████████████████ attorneys' fees and a several-years long cloud on its business as a result of Amgen's refusal to give up.  And that poses a far greater burden on a start-up like Coherus than an enormous pharmaceutical company, like Amgen.  Indeed, if the Court does not award fees, Amgen may win by losing—Amgen will send the message to would-be biosimilar companies that no matter *how* clear their non-infringement argument, Amgen will force them to endure years of attorneys' fees if they dare to compete.  Amgen should be deterred from using costly litigation as a tool to eliminate legitimate, non-infringing biosimilar competition.

Coherus should not have to bear its attorneys' fees for such a patently improper lawsuit.  The Court should deem this an extraordinary case and award attorneys' fees.

II.     **STATEMENT OF FACTS**

   A.     **The Patent Dance**

The BPCIA provides a streamlined process to obtain approval to market a "biosimilar" drug product—*i.e.*, one that is "highly similar" to an already-approved biologic product, known

as the "reference product." *See* 42 U.S.C. § 262(i), (k). The BPCIA also established a patent dispute resolution procedure, commonly referred to as the "patent dance," that allows the parties to exchange technical information and litigation contentions prior to any potential district court proceedings. *See* 42 U.S.C. § 262(*l*). This exchange of information allows the parties to narrow or eliminate disputes over infringement prior to filing a patent infringement lawsuit.

In August 2016, Coherus initiated the patent dance by filing an abbreviated Biologic License Application ("aBLA"), seeking authorization to market a biosimilar of Amgen's pegfilgrastim product, Neulasta. D.I. 1, ¶ 10. Seven months before this case was filed, in October 2016, Coherus provided Amgen with its entire aBLA and other requested manufacturing information, which details the biosimilar product Coherus plans to market and the manufacturing process that Coherus plans to use. 42 U.S.C. § 262(*l*)(2)(A); D.I. 1, ¶¶ 12-13. After Amgen identified the patents for which it believed infringement "could reasonably be asserted" against Coherus, the parties exchanged detailed infringement and validity contentions, with Coherus's running to nearly ▮ pages of narrative and claim charts. 42 U.S.C. § 262(*l*)(3)(A)-(C); D.I., ¶ 36.

Coherus's non-infringement contentions for U.S. Patent No. 8,273,707 (the "'707 patent"), the patent in-suit, provided to Amgen in January 2017, explained why prosecution history estoppel applies to the salt-claim limitation and prevents Amgen from asserting the doctrine of equivalents against Coherus's process. Ex. 1 at 60-62. Coherus also detailed its dedication-disclosure argument that the '707 patent specification disclosed, but did not claim, the accused salts thus dedicating them to the public. *Id.* at 60.

**B.    The Lawsuit**

Despite being on notice for at least four months that prosecution history estoppel and the disclosure-dedication doctrine barred its doctrine of equivalents infringement theory, Amgen

3

filed suit alleging that Coherus infringed the '707 patent. This patent requires the use of a combination of two salts, and specifically recites three combinations in its claims: sulfate/citrate, sulfate/acetate, and acetate/citrate. Because Amgen received Coherus's aBLA months in advance of the litigation, it knew that Coherus's process did not use any of those particular combinations, so Amgen alleged in its complaint that Coherus only infringed under the doctrine of equivalents.

In response, Coherus promptly filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). D.I. 10. Coherus argued that Amgen's infringement theory was barred by both the doctrines of prosecution history estoppel and disclosure-dedication. *Id*. at 2, 6, 10-13, Specifically, Coherus argued that Amgen was estopped from arguing the doctrine of equivalents because during prosecution it repeatedly distinguished a prior art reference on the basis that the reference did not teach or suggest the "*particular* combination of salts" recited in Amgen's claims. *Id*., Ex. 3 at 5 (emphasis in original). Coherus also argued that Amgen dedicated the salts used by Coherus to the public because the '707 patent specification disclosed these salts and suggested that they could be combined to achieve the claimed invention. *Id*. at 12-13.

In December 2017, Magistrate Judge Burke issued a Report and Recommendation finding that Amgen's complaint should be dismissed with prejudice because prosecution history estoppel barred Amgen from asserting its doctrine of equivalents claim.[2] D.I. 50. Magistrate Judge Burke held that during prosecution Amgen "clearly and unmistakably – and indeed, repeatedly – indicated to competitors that it surrendered processes using combinations of salts

---

[2] The Magistrate Judge recommended that the case be dismissed with prejudice "because amendment would be futile in light of the Court's conclusion that Amgen's claim for relief fails as a matter of law," *Id.* at 18, n. 12 (internal citation omitted).

4

different from the '*particular* combinations of salts recited in the [] claims.'" *Id.* at 12 (emphasis in original).

This Court adopted the Report and Recommendation on March 26, 2018. D.I. 72. In dismissing the case with prejudice, this Court relied on the prosecution history estoppel argument as analyzed by Magistrate Judge Burke, and it also agreed with Coherus's disclosure-dedication argument which Magistrate Judge Burke did not address. *Id.*

Amgen appealed to the Federal Circuit. In a precedential opinion the Federal Circuit ruled that prosecution history estoppel applied, and affirmed this Court's decision.[3] *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019). The Federal Circuit determined it relevant that Amgen emphasized the word "particular" in its prosecution arguments, and referred to its "particular salts" repeatedly, at one point using the phrase three times in the span of two pages. *Id.* at 1160.

### III. ARGUMENT

#### A. Legal Standard

Under 35 U.S.C. § 285, the prevailing party in a patent case may be awarded reasonable attorney fees if the case is "exceptional," which the Supreme Court has held is "simply [a case] that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In analyzing whether a case is exceptional, courts in this district typically consider such nonexclusive factors as a party's objective unreasonableness in law or fact, and considerations of compensation and deterrence. *Octane Fitness*, 572 U.S. at 554 n. 6;

---

[3] The Federal Circuit did not reach the issue of public dedication. *Amgen*, 931 F.3d at 1161 (Fed. Cir. 2019).

*Finnavations LLC v. Payoneer, Inc.*, 2019 WL 1236358, at *2 n. 3 (D. Del. Mar. 18, 2019);

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2015 WL 4455606, at *3 (D. Del. July 21, 2015), report and recommendation adopted, 2015 WL 5768385 (D. Del. Sept. 30, 2015).

### B. This Case is Exceptional

This is an "exceptional case," warranting attorney's fees, for numerous reasons.

First: the weakness of Amgen's doctrine of equivalents case. *See, e.g., Octane Fitness,* 572 U.S. at 554 (holding that a case is exceptional when a party's litigating position is weak in fact and/or law); *Finnavations*, 2019 WL 1236358, at *2 (finding a case exceptional where non-prevailing party had weak legal arguments). The claims of the '707 patent disclose with admirable precision the three specific combinations of salts covered by the claims. Yet Amgen apparently would expand its claims, via the doctrine of equivalents, to cover a combination of ▮▮▮▮▮ Notably, Amgen has *never* articulated any equivalency argument that would distinguish Coherus's ▮▮▮▮▮ from any other salt combination. Indeed, Amgen has never articulated any coherent equivalency argument at all: As Magistrate Judge Burke observed, "Amgen's Complaint does not actually allege any facts that would support the notion that there is equivalence between the ▮▮▮▮▮ used in Coherus's process and one or more of the three recited salt pairs in the patent. It simply states the legal conclusion that there is such equivalence, nothing more … And so, the Complaint is clearly insufficiently pleaded in that respect." D.I. 50 at 7-8.

Second: Amgen's bait-and-switch during patent prosecution. Amgen told the Patent Office—and the world—that its claims were limited to the *particular* combinations claimed, going as far as to italicize the word "particular" to make clear that its claims were limited to these particular combinations. D.I. 10, Ex. 3 at 5 (emphasis in original). Having persuaded the

6

Patent Office to grant a patent on the basis of this representation, Amgen took the position in this litigation that its patent covered ███████████████.

Third: Amgen's failure to grapple with Coherus's arguments during the district court proceedings. When Coherus offered plain evidence of prosecution history estoppel, Amgen could have at least *acknowledged* its inconsistent positions or said *something* to try to reconcile its positions. But it did neither: As indicated by Magistrate Judge Burke, "it is telling that nowhere in Amgen's answering brief does it actually grapple with the substance of the prosecution history upon which Coherus's argument relies. Thus, it never attempts to explain with any specificity *why* those statements fail to trigger prosecution history estoppel." D.I. 50 at 14 (emphasis in original).

Instead, Amgen made "peripheral arguments." D.I. 50 at 14-17. For instance, Amgen argued that claim construction and discovery were necessary before a ruling on whether prosecution history estoppel – an objective inquiry and legal question – applies here. D.I. 50 at 15. Amgen also argued that prosecution history estoppel does not apply to "clarifying amendments," but made "no attempt to explain how the relevant statements actually amount to mere clarification, as opposed to the clear surrender of claim scope." D.I. 50 at 15-16. *See Magnetar*, 2015 WL 4455606, at *10 (awarding attorneys' fees based on objectively unreasonable arguments in litigation); *Finnavations*, 2019 WL 1236358, at *2 (awarding attorneys' fees based on a weak legal argument).

Fourth: Amgen's misuse of the BPCIA "patent dance." Recognizing the complexity of biosimilar patent cases and the burden they impose on the parties and the courts, Congress encouraged litigants to engage in information-sharing before litigation to ensure that parties would not sue for infringement without a good reason. *Amgen Inc. v. Sandoz Inc.*, 877 F.3d

7

1315, 1321 (Fed. Cir. 2017) (stating that "The BPCIA … established a unique and elaborate process for information exchange…in order to help resolve biosimilar patent disputes."); *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1672 (2017) (stating that "To encourage parties to comply with its procedural requirements, the BPCIA includes various consequences for failing to do so."). As the first step of the patent dance, seven months before this litigation started, Coherus shared its aBLA and other requested manufacturing information with Amgen and disclosed that its manufacturing process was not using any of the three enumerated salt combinations recited in the claims. D.I. 1, ¶¶ 35-36. And if there was any confusion on Amgen's part, Coherus also disclosed the exact legal arguments that would ultimately prove successful at the motion to dismiss stage four months before this litigation started. Ex. 1 at 60-62. The patent dance was designed for this case: Amgen should have reviewed the facts and realized that its initial concern about infringement was unfounded. Instead, it forced Coherus into years of litigation, turning the "patent dance" into a meaningless exercise.

      Fifth is the unusual fact that this case was resolved on a 12(b)(6) motion to dismiss. This court has stated that there "is no question that [a] case stands out from others" where defendants prevail by a "truly rare occurrence." *Cosmo Techs. Ltd. v. Actavis Labs. Fl, Inc.*, 2019 WL 1417459, at *2 (D. Del. Mar. 28, 2019) (prevailing on a Rule 52(c) motion upon conclusion of Plaintiffs' case-in-chief). It is extraordinarily unusual for a Rule 12(b)(6) motion to be granted in an infringement claim under the doctrine of equivalents—and this is even more unusual in a factually complex area like biosimilars. Of the approximately 7,071 patent cases we identified as filed in this district over the past 10 years, only approximately 130, including this case, granted a

motion to dismiss under Rule 12(b)(6).[4] Thirty-three of these cases granted a motion to dismiss without prejudice, and eight granted a motion to dismiss with prejudice, in whole or in part.[5] Five of the cases granting a motion to dismiss with prejudice were resolved based on the motion.[6] Attorneys' fees were sought in three of these five cases, and awarded in two. *Arunachalam v. Int'l Bus. Machines Corp.*, 2019 WL 1388625, at *2 (D. Del. Mar. 27, 2019); *Finnavations*, 2019 WL 1236358.[7]

It is extremely rare to prevail on a 12(b)(6) motion for non-infringement because courts generally hold that claim construction and factual development are necessary before performing the infringement analysis. And it is even more unusual for a Rule 12(b) motion to be granted based on two independent grounds—prosecution history estoppel and the disclosure-dedication doctrine. This double dismissal underscores the weakness of Amgen's case.

Sixth is Amgen's refusal to give up. After both the Magistrate Judge and the District Court dismissed its claim, Amgen appealed and prolonged this litigation until a unanimous

---

[4] The search was conducted in September, 2019 using Docket Navigator's document search tool with the field "Courts" set to the Delaware District (DED), and the field "Types of Document" set to Motion to Dismiss – Failure to State a Claim (FRCP 12(b)(6)). (Docket Navigator can be found at www.docketnavigator.com.)

[5] The remaining cases did not specify a position regarding prejudice.

[6] The grant of a 12(b)(6) motion in a patent suit is rare because the district court accepts "all the complaint's well-pleaded facts as true," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211(3d Cir. 2009), and the infringement analysis ordinarily rests on the proper scope of the asserted claims. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("It is not appropriate to resolve [infringement disputes] . . . on a 12(b)(6) motion without the benefit of claim construction.")

[7] The third case denied attorneys' fees because the facts of the case created a unique situation not directly addressed by precedent. *Fraunhofer-Gesellschaft Zur Forderung der angewandten Forschung e.V. v. Sirus XM Radio Inc.*, 2019 WL 1091386, at *2 (D. Del. Mar. 8, 2019). That is not analogous to the present case which dealt with a standard doctrine of equivalents argument.

Federal Circuit panel affirmed the District Court. While pursuing an appeal is not by itself unreasonable, Amgen should bear the cost of needlessly prolonging this quixotic litigation.

Seventh: the troubling indications in Amgen's litigation positions is that it was merely trying to extend litigation. In the District Court, Amgen argued that claim construction and discovery were necessary before ruling on whether prosecution history estoppel – an objective inquiry and legal question – applies here. This makes no sense—Amgen offered *no* explanation of how claim construction and discovery testimony could possibly have illuminated the legal dispute over what the prosecution history objectively discloses—and the District Court rightly rejected it. D.I. 72 at 7; D.I. 50 at 15. On appeal, Amgen did the same thing: again demanding the right to develop a factual record (Brief for Appellant at 42-43, *Amgen*, 931 F.3d at 1161 (Fed. Cir. 2019) (No. 18-1993), D.I. 27), again offering no explanation of what facts would be useful or what they would show. The Federal Circuit did not even dignify this argument with a response.

Eighth: the context in which this litigation arises. This is a case arising under the BPCIA—a statute devised for the specific purpose of ensuring biosimilar competition for biologic drugs. Coherus is a young start-up company, founded in 2010, that currently markets only one biosimilar drug: UDENYCA (pegfilgastrim). Coherus's aBLA for UDENYCA is what triggered the litigation in this case. Coherus is exactly the type of company that the BPCIA's "patent dance" was designed for—a nascent biosimilars manufacturer who must spend its funds on research and development to bring life-saving drugs to market, rather than on sprawling, hyper-complex patent litigation. Amgen, by contrast, is a multinational pharmaceutical company

with over $20 billion in annual revenues.[8] When Amgen brings suits like this, it sends a message to Coherus and other competitors: no matter how hard you try to design around our patents, no matter how clear your disclosures are during the patent dance, we will use our vast resources to litigate with you to the bitter end. It is not fair that Coherus should have to bear the cost of Amgen's decision to use the patent system in this manner.

C.  **Fair Estimate of Amount Sought**

Rule 54(d)(2)(B)(iii) requires motions for attorney's fees to "state the amount sought or provide a fair estimate of it." From the inception of this case in May 2017 through the District Court's Final Judgment on April 18, 2018, Coherus incurred an estimated ███████ attorneys' fees. On appeal Coherus incurred an additional estimated ███████ attorneys' fees. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir. 2017) (affirming the Delaware district court's decision to award appellate fees under § 285). Coherus also expects to incur an estimated ███████ attorneys' fees for this motion and its subsequent reply.

Coherus will provide supporting evidentiary material according to the schedule the Court directs in light of the circumstances of this case.[9] Coherus respectfully suggests that in the event the Court rules in its favor, the parties meet-and-confer regarding the fee award and, within 21

---

[8] In 2018 Amgen's total revenues were $23.7 billion. Amgen News Releases, *Amgen Reports Fourth Quarter and Full Year 2018 Financial Results*, AMGEN (Jan. 29, 2019), https://www.amgen.com/media/news-releases/2019/01/amgen-reports-fourth-quarter-and-full-year-2018-financial-results/.

[9] The Notes of the Advisory Committee on the 1993 Amendment to Rule 54 provide that "[t]he rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)."

days of the Court's order, either submit a joint proposed order with an agreed-upon fee award, or, if they cannot agree, file letters of no more than three pages explaining their respective positions. *See, e.g.*, *NOVA Chems. Corp. v. Dow Chem. Co.*, 2015 WL 5766257, at *7 (D. Del. Sept. 30, 2015); *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 363 (D. Del. 2015); *Vehicle Operation Techs. LLC v. Ford Motor Co.*, 2015 WL 4036171, at *4 (D. Del. July 1, 2015).

## IV.　CONCLUSION

For the foregoing reasons, Coherus respectfully requests that it be awarded its attorneys' fees under § 285.

Dated: October 11, 2019

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Kenneth L. Dorsney*
　　　　　　　　　　　　　　　　　　　　　　　Kenneth L. Dorsney (#3726)
　　　　　　　　　　　　　　　　　　　　　　　Richard K. Herrmann (#405)
　　　　　　　　　　　　　　　　　　　　　　　MORRIS JAMES LLP
　　　　　　　　　　　　　　　　　　　　　　　500 Delaware Avenue, Suite 1500
　　　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　　　　(302) 888-6800
　　　　　　　　　　　　　　　　　　　　　　　kdorsney@morrisjames.com

　　　　　　　　　　　　　　　　　　　　　　　OF COUNSEL:

　　　　　　　　　　　　　　　　　　　　　　　Bradford P. Lyerla
　　　　　　　　　　　　　　　　　　　　　　　Louis E. Fogel
　　　　　　　　　　　　　　　　　　　　　　　Aaron A. Barlow
　　　　　　　　　　　　　　　　　　　　　　　JENNER & BLOCK LLP
　　　　　　　　　　　　　　　　　　　　　　　353 N. Clark Street
　　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654
　　　　　　　　　　　　　　　　　　　　　　　(312) 222-9350

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　　　*Coherus Biosciences, Inc.*

# Exhibit 1

Redacted In Its Entirety

**DEFENDANT COHERUS BIOSCIENCES, INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES**